IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL NO. 06-00451 SOM/BMK CIVIL NO. 07-00372 SOM/BMK (consolidated) |
| Plaintiff, | ) ) | |
| and | ) ) ) | |
| AHMED ALMRAISI, NAGI A. ALZIAM, SAMED KASSAM, MUTHANA A. SHAIBI, NORK YAFAIE, ABDULLAH YAHIA, AHMED AL-MLHANY, | ) ) ) ) ) ) | ORDER DENYING NORWEGIAN CRUISE LINE LTD.'S MOTION FOR SUMMARY JUDGMENT, DENYING NORWEGIAN CRUISE LINE LTD.'S |
| Plaintiff-Intervenors, | ) ) | MOTION FOR RULE 11 SANCTIONS, GRANTING NCL CORPORATION |
| vs. | ) ) | LTD.'S MOTION FOR SUMMARY JUDGMENT, DENYING BOTH OF |
| NCL AMERICA, INC., NORWEGIAN CRUISE LINE, Ltd., and NORWEGIAN CORPORATION Ltd., | ) ) ) ) | EEOC'S COUNTER MOTIONS FOR SUMMARY JUDGMENT AGAINST NORWEGIAN CRUISE LINE LTD. AND NCL CORPORATION LTD., AND |
| Defendants. | ) ) | DENYING BOTH OF PLAINTIFFS-INTERVENORS' COUNTER MOTIONS |
| _____ | ) ) | FOR SUMMARY JUDGMENT AGAINST NORWEGIAN CRUISE LINE LTD. |
| ASHMED ALMLHANY, | ) ) | AND NCL CORPORATION LTD. |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| NCL AMERICA, INC., NORWEGIAN CRUISE LINE, Ltd., and NORWEGIAN CORPORATION Ltd., | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING NORWEGIAN CRUISE LINE LTD.'S MOTION FOR
SUMMARY JUDGMENT, DENYING NORWEGIAN CRUISE LINE LTD'S
MOTION FOR RULE 11 SANCTIONS, GRANTING NCL CORPORATION
LTD.'S MOTION FOR SUMMARY JUDGMENT, DENYING BOTH OF EEOC'S
COUNTER MOTIONS FOR SUMMARY JUDGMENT AGAINST NORWEGIAN
CRUISE LINE LTD. AND NCL CORPORATION LTD., AND DENYING BOTH
OF PLAINTIFFS-INTERVENORS' COUNTER MOTIONS FOR SUMMARY JUDGMENT
AGAINST NORWEGIAN CRUISE LINE LTD. AND NCL CORPORATION LTD.

I.          <u>INTRODUCTION.</u>

Before the court are two motions for summary judgment, four counter motions for summary judgment, and one motion for Rule 11 sanctions.  This is an employment discrimination case. In July 2004, Plaintiffs-Intervenors, who worked on the MS Pride of Aloha cruise ship, were discharged or constructively discharged.  The former employees allege that they were fired without good cause because of their employer's bias against their national origin (Yemeni/Middle Eastern) and/or religion (Muslim).

Pride of Aloha is directly owned and operated by NCL America, Inc. ("NCL America").  NCL Corporation Ltd. ("NCL Corp.") owns Arrasas Limited ("Arrasas"), which owns NCL America Holdings, Inc. ("NCL Holdings"), which in turn owns NCL America.[1] In April of 2004, Arrasas sold Norwegian Cruise Line Ltd. ("Norwegian Cruise Line"), whose functions were thereafter performed by NCL (Bahamas), Ltd. ("NCL Bahamas").

On August 22, 2006, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a complaint against NCL America, Norwegian Cruise Line, and NCL Corp. (collectively, "Defendants"), alleging employment discrimination in violation of Title VII of the Civil Rights Act.  On November 22, 2006, the discharged employees intervened as Plaintiffs-Intervenors

---

[1] The court refers to this corporate organization as the NCL Corporate Structure.

pursuant to 42 U.S.C. § 2000e-5(f)(1) and Rule 24(a) of the
Federal Rules of Civil Procedure.[2]  Plaintiffs-Intervenors allege
unlawful discrimination in violation of Title VII, 42 U.S.C.
§ 1981, and Haw. Rev. Stat. § 378-2.  In addition, Plaintiffs-
Intervenors claim intentional and/or negligent infliction of
emotional distress.

Norwegian Cruise Line's present motion for summary
judgment ("Cruise Line Motion") argues that claims by the EEOC
and Plaintiffs-Intervenors (collectively, "Plaintiffs") against
Norwegian Cruise Line cannot proceed because Norwegian Cruise
Line ceased to be part of the NCL Corporate Structure before the
alleged discrimination and because Plaintiffs-Intervenors failed
to exhaust administrative remedies against Norwegian Cruise Line.
Norwegian Cruise Line also moves for Rule 11 sanctions, claiming
that Plaintiffs' claims against Norwegian Cruise Line were "not
based on reasonable inquiry" and "lack evidentiary support."
Defendant Norwegian Cruise Line, Ltd.'s Motion for Rule 11
Sanctions Against U.S. Equal Employment Opportunity Commission
and/or its Counsel and Plaintiffs-Intervenors and/or their
Counsel (Nov. 27, 2007) ("Rule 11 Motion") at 2.

---

[2] On July 12, 2007, Ashmed Almlhany, a Plaintiff-
Intervenor, filed a separate action against Defendants alleging
unlawful discrimination (Civ. No. 07-00372).  On September 17,
2007, Magistrate Judge Barry Kurren consolidated Almlhany's
action with Civ. No. 06-00451.

Plaintiffs respond that Norwegian Cruise Line is just the former name for NCL Bahamas, which is in the NCL Corporate Structure and which allegedly participated in the discriminatory acts, and that Plaintiffs-Intervenors did exhaust administrative remedies.  Plaintiff EEOC's Opposition and Counter-Motion for Partial Summary Judgment in Response to Defendant Norwegian Cruise Line Limited's Motion for Summary Judgment (Jan. 4, 2008) ("EEOC Opp'n to Norwegian Cruise Line").  The EEOC and Plaintiffs-Intervenors also separately counter move for summary judgment.  See Plaintiffs-Intervenor's Opposition to Defendant Norwegian Cruise Line Ltd.'s Motion for Summary Judgment and Opposition to Defendant NCL Corporation, Ltd's Motion for Summary Judgment (Jan. 4, 2004) ("Plaintiffs-Intervenor Opp'n") at 1.

Complicating the motion practice, the EEOC filed a motion to amend the Complaint, seeking to add NCL Bahamas as a defendant.[3]  At the hearing on the present dispositive motions, held on January 22, 2008, Plaintiffs stated that, if Magistrate Judge Kurren allowed Plaintiffs to add NCL Bahamas as a defendant, Plaintiffs would withdraw all claims against Norwegian Cruise Line.  On January 25, 2008, Magistrate Judge Kurren granted Plaintiffs' Motion to Amend.[4]  Accordingly, Norwegian

---

[3]  Plaintiffs-Intervenors joined in that motion, set for hearing before Magistrate Judge Kurren.

[4]  As the parties agree that the allegations of the Amended Complaint do not otherwise differ from the allegations of

4

Cruise Line's Motion for Summary Judgment and the EEOC's and Plaintiffs-Intervenors' counter motions have been rendered moot and are denied on that ground.

With regard to Norwegian Cruise Line's motion for Rule 11 sanctions, the court concludes that Norwegian Cruise Line has not demonstrated that Plaintiffs had no reasonable basis for filing claims against Norwegian Cruise Line. Norwegian Cruise Line's motion for sanctions is denied.

In a separate motion for summary judgment ("NCL Corp. Motion"), NCL Corp. asserts that (1) NCL Corp. was not involved in the discriminatory conduct, (2) NCL Corp. is not subject to Title VII because it has no employees, and (3) Plaintiffs failed to exhaust administrative remedies under Title VII. Plaintiffs respond that NCL Corp. is a proper defendant because (1) NCL Corp. participated in the discriminatory conduct, (2) NCL Corp. is part of an integrated enterprise that includes subsidiary corporations with thousands of employees, and (3) NCL Corp. participated in the administrative proceedings. Plaintiff EEOC's Opposition and Counter-Motion for Partial Summary Judgment in Response to Defendant NCL Corp. Ltd's Motion for Summary Judgment

---

the original Complaint, this court deems the present dispositive motions to apply to the Amended Complaint. References to the "Complaint" here encompass the Amended Complaint unless otherwise indicated or obvious from the context.

(Jan. 4, 2008) ("EEOC Opp'n to NCL Corp."). Again, the EEOC and Plaintiffs-Intervenors counter move for summary judgment.

Because the court determines that NCL Corp. does not qualify as an employer under Title VII and because, in any event, there is no evidence that NCL Corp. participated in the discriminatory conduct, the court grants NCL Corp.'s motion for summary judgment and denies the EEOC's and Plaintiffs-Intervenors' counter motions for summary judgment against NCL Corp.

II.      LEGAL STANDARDS.

The court reviews the motions under the Federal Rules of Civil Procedure as amended effective December 1, 2007. As the amendments to the rules in issue here were stylistic only, the court relies on authorities construing the previous version of the applicable rules.

A.       Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary

6

judgment must be granted against a party that fails to demonstrate facts to establish an essential element at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must "set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."). "A scintilla of

evidence or evidence that is merely colorable or not
significantly probative does not present a genuine issue of
material fact." Addisu, 198 F.3d at 1134 (citation omitted).
"[I]f the factual context makes the non-moving party's claim
implausible, that party must come forward with more persuasive
evidence than would otherwise be necessary to show that there is
a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v.
Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987)
(citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

        B.        Rule 11 Sanctions.

        Rule 11(b) of the Federal Rules of Civil Procedure
requires that any party filing with the court must "certif[y]
that to the best of the person's knowledge, information, and
belief, formed after an inquiry reasonable under the
circumstances [that]":

                (2) the claims, defenses, and other legal
                contentions are warranted by existing law or
                by a nonfrivolous argument for extending,
                modifying, or reversing existing law or for
                establishing new law; [and]

                (3) the factual contentions have evidentiary
                support or, if specifically so identified,
                will likely have evidentiary support after a
                reasonable opportunity for further
                investigation or discovery . . ."

Fed. R. Civ. P. 11(b).  If the court determines that Rule 11(b)
has been violated, "the court may impose an appropriate sanction

8

on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact . . . ." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Thus, before filing a complaint, a party has an "affirmative duty" to conduct a reasonable inquiry into the facts and law of the case. See Lloyd v. Schlag, 884 F.2d 409, 412 (9th Cir. 1989). The conduct of the signing party is "one of objective reasonableness under the circumstances." Hudson v. Moore Bus. Forms, Inc., 836 F.2d 1156, 1159 (9th Cir. 1987).

III.     BACKGROUND FACTS.

Pride of Aloha is owned and operated by NCL America, which is part of the NCL Corporate Structure. Deposition of Robert Kritzman (Mar. 15, 2007) ("Kritzman Dep.") at 167. Under the NCL Corporate Structure, NCL Corp. owns Arrasas, which owns NCL America Holdings, which in turn owns NCL America. Id. Norwegian Cruise Line was sold to Inter-Ocean Limited, which is, according to Defendants, outside the NCL Corporate Structure. Declaration of Robert Kritzman (Jan. 2, 2007) ("Kritzman Decl.") at ¶ 7. Norwegian Cruise Line says NCL Bahamas then assumed what had been Norwegian Cruise Line's functions.

Defendants say that NCL Corp. only "holds shares of another company" and does not have any employees, although it does have officers.  Deposition of Colin Veitch (Nov. 9, 2007) ("Veitch Dep.") at 6, 26-27.  Defendants also assert that NCL Corp. does not own or operate any cruise ships, including the Pride of Aloha.  Kritzman Dep. at 165.

Although in its 2007 SEC Report, NCL Corp. states, "We are one of the leading cruise ship operators in the world . . . . [and] we currently operate 14 ships," that report defines "we" as including NCL Corp. and its subsidiaries.   Ex. 59 (attached to EEOC Opp'n to NCL Corp.).

NCL America maintains its principal business office on 700 Bishop Street in Honolulu, Hawaii.  Kritzman Dep. at 14; Veitch Dep. at 12.  NCL Corp. and NCL Bahamas share a corporate address of 7665 Corporate Center Drive in Miami, Florida.  Veitch Dep. at 11; Ex. 13 (attached to EEOC Opp'n to NCL Corp.).  In June 2004, NCL America also listed its mailing address as 7665 Corporate Center Drive, Miami, Florida, with the Florida Department of State.  Ex. 15 (attached to EEOC Opp'n to NCL Corp.).

In 2004, Colin Veitch served as Chief Executive Officer and Chairman of the Board for NCL America.  Kritzman Dep. at 20; Veitch Dep. at 11.  During that same time, Robert Kritzman was Executive Vice President and Managing Director of the Hawaii

10

operations of NCL America.  Kritzman Dep. at 18-19.  In July

2004, NCL Bahamas employed William Hamlin as Executive Vice-

President Fleet Operations, George Chesney as the Vice-President

of Human Resources, and Matthew Lewis as Director of Security.

Deposition of Hamlin (Nov. 9, 2007) ("Hamlin Dep.") at 8; Chesney

Deposition (Nov. 9, 2007) ("Chesney Dep.") at 7; Lewis Deposition

(Nov. 7, 2007) ("Lewis Dep.") at 16.

According to a February 13, 2007, Hoovers Report,

Kritzman, Veitch, and Hamlin were officers with NCL Corp in

2007.[5]  Ex. 13 (attached to EEOC Opp'n to NCL Corp.); Kritzman

Dep. at 162-63.

From April to July 2004, Plaintiffs-Intervenors were

crewmembers on the Pride of Aloha, a cruise ship based in Hawaii.

Plaintiff-Intervenor Opp'n at 2.  In July 2004, Plaintiffs-

_____

[5]  Plaintiffs contend that the individuals who
participated in the termination decision concurrently held
positions with NCL America, NCL Corp., and/or Norwegian Cruise
Line.  From the record, it is unclear whether or how these
individuals were affiliated with NCL Corp. during the July 2004
termination period.  Plaintiffs submit various documents,
including a 2007 SEC report, that indicates that these
individuals held concurrent officer positions with these three
companies in 2007.  Plaintiffs point to no evidence suggesting
whether or how these individuals were affiliated with NCL Corp.
in 2004.  See also NCL Corp. Reply at 9 ("The only persons who
straddled the Corp and NCL America entities in 2004 are Veitch
and Kritzman. . . . The other persons the EEOC identifies as
hav[ing] a role in this matter (Lewis, Chesney, and Hamlin) were
employees of NCL (Bahamas)).  The court will assume for the
purposes of this summary judgment motion, however, that the
individuals who participated in the termination decision also
held officer positions with NCL Corp. in 2004.

Intervenors were discharged or constructively discharged, allegedly due to racial and/or religious animus that became evident in a "security threat" investigation.  EEOC Opp'n to NCL Corp. at 2-3.[6]

Plaintiffs-Intervenors allege that Pride of Aloha staff contacted Lewis with security concerns regarding some of the Plaintiffs-Intervenors in July 2004.  Lewis contacted the FBI, which investigated the matter.  While the FBI investigation was proceeding, Veitch, Hamlin, Chesney, and Lewis allegedly met in Vietch's office in Miami.  Kritzman joined the meeting by conference call from the Honolulu office of NCL America.  Plaintiffs claim that Kritzman, Hamlin, Chesney, and Lewis decided to fire Plaintiffs-Intervenors.  Id. at 10-11; Kritzman Dep. at 160.  Veitch, the President of NCL America, agreed with that decision.  Veitch Dep. at 54-56, 58; Kritzman Dep. at 160-61.  For his part, Kritzman says he probably thought he should discuss the terminations with Veitch because Veitch was the President of NCL America.  Kritzman Dep. at 129.

On July 24, 2004, Kritzman instructed Pride of Aloha staff to fire six of the Plaintiffs-Intervenors.  Kritzman Dep. at 45-46.

_____

[6] All page citations from the EEOC Opp'n to NCL Corp. refer to Document Number 242, filed on January 15, 2008, subsequent to the court's request that the EEOC refile its papers in accordance with the format requirements of Local Rule 7.5.

That same day, the FBI boarded the Pride of Aloha as part of its investigation, ultimately concluding that none of the Plaintiffs-Intervenors posed any security threat.  Even after learning of the FBI determination, Pride of Aloha staff remained committed to firing Plaintiffs-Intervenors and did fire them. Deposition of Joseph Gargiulo (Mar. 6, 2007) ("Gargiulo Dep.") at 56-62.

The following day, on July 25, 2004, a seventh Plaintiff-Intervenor who had not been included in the FBI investigation, left, having allegedly been constructively discharged.

Plaintiffs-Intervenors filed charges of discrimination with the EEOC against NCL America.  Ex. 2 (attached to EEOC Opp'n to NCL Corp.).  The EEOC investigated and found that Plaintiffs-Intervenors had been discharged and/or constructively discharged on the basis of their national origin and/or religion.  Ex. 3 (attached to EEOC Opp'n to NCL Corp.).  NCL America received notice of the charges of discrimination and the EEOC's determination.  Kritzman Dep. at 70-71.  Veitch said the NCL Corporate Structure's Miami General Counsel's office should have been, but was not, promptly told that EEOC charges had been filed.  Veitch Dep. at 66.  The EEOC invited NCL America to conciliate, but no settlement was reached.  EEOC Opp'n to NCL Corp. at 5.  This action ensued.

13

IV.        <u>ANALYSIS.</u>

The motions now before this court fall into two groups: motions relating to Norwegian Cruise Line and motions relating to NCL Corp.

A.        <u>Norwegian Cruise Line.</u>

On December 14, 2007, Plaintiffs moved for leave to amend their Complaint to add NCL Bahamas as a defendant.  Arguing that Norwegian Cruise Line was a former name for NCL Bahamas, and that NCL Bahamas was liable to them, Plaintiffs stated at the hearing on these dispositive motions that, if allowed to add NCL Bahamas, they would dismiss all claims against Norwegian Cruise Line.  As Plaintiffs are being allowed to add NCL Bahamas, their counter motions and Norwegian Cruise Line's motion are moot and are denied on that ground.  The court does not here decide the issues of fees and costs raised orally at the hearing on the dispositive motions.

That leaves the Rule 11 motion.  Norwegian Cruise Line argues that Plaintiffs "filed claims against Norwegian Cruise Line that were not based on reasonable inquiry and that lack evidentiary support."  Motion for Rule 11 at 2.  Norwegian Cruise Line also contends that Plaintiffs failed to exhaust administrative remedies.  <u>Id.</u> at 7.

Rule 11 sanctions should be imposed if a paper is filed for an "improper purpose" or is "frivolous."  <u>Townsend v. Holman</u>

14

Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).
A filing is frivolous if it is "both baseless and made without a
reasonable and competent inquiry." Id. The standard employed in
assessing improper purpose and frivolousness is reasonableness.
G.C. & K.B. Inv., Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir.
2003). Reasonableness is an objective standard and does not
depend on the subjective intent of the filing party. Id. "The
'reasonable man' against which conduct is tested is a competent
attorney admitted to practice before ths district court."
Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir.
1986).

There is a factual dispute about whether this case
falls under an exception to the administrative exhaustion
requirement. See Nowick v. Gammell, 351 F. Supp. 2d 1025, 1036
(D. Haw. 2004). Moreover, the corporate organization of the
numerous related business entities is sufficiently difficult to
decipher that the court cannot conclude that Plaintiffs' pre-
Complaint inquiry was not reasonable or competent. Plaintiffs
were entitled to rely on court filings and corporate disclosure
reports when they named Norwegian Cruise Line as a defendant, and
these are at least ambiguous.

The court concludes that Norwegian Cruise Line does not
establish that Plaintiffs lacked a reasonable basis for believing
that Norwegian Cruise Line fell under one of the exceptions to

15

administrative exhaustion requirements.  Nor does Norwegian

Cruise Line show that Plaintiffs had no reasonable basis for

alleging that Norwegian Cruise Line participated in the alleged

discriminatory conduct as NCL Bahamas.  Norwegian Cruise Line's

Motion for Rule 11 Sanctions is denied.

      B.        <u>NCL Corp.</u>

      NCL Corp. moves for summary judgment, arguing that

(1) NCL Corp. was not involved in the discriminatory conduct,

(2) NCL Corp. is not subject to Title VII because it has no

employees, and (3) Plaintiffs failed to exhaust administrative

remedies against it.  NCL Corp. Motion.[7]

---

[7]NCL Corp. also raises numerous procedural grounds for striking EEOC's Opposition such as noncompliance with local rules, untimely and duplicative counter motions, and failure to accurately cite exhibits.  NCL Corp. Reply 1-5.  On January 14, 2008, the court asked the EEOC to refile its papers in compliance with local rules.  The court also further discussed violation of local rules with the EEOC at the hearing, noting that monetary sanctions could be imposed if the EEOC continued to violate local rules.

Nothing in the Local Rules or the Rule 16 Scheduling Order prohibits the filing of counter motions after the dispositive motions deadline, so long as the counter motions are filed in timely response to timely filed originating motions.

Finally, although the court does not strike the EEOC's papers, the court agrees with Defendants that the EEOC's record references are woefully deficient.  Factual assertions often mischaracterize exhibits, or reference is made to exhibit pages that are not actually attached.  The court has been forced to spend a great deal of time trying to determine whether there really is support for the EEOC's assertions.  The court will not continue to do this and is prepared to strike further filings that are defective in this regard.

This court grants NCL Corp. summary judgment on all claims against it.  In the first instance, NCL Corp. does not qualify as an employer for Title VII purposes, when viewed as an independent corporation.  Moreover, there is no evidence that NCL Corp. participated directly in the alleged discriminatory conduct.  The court declines to treat NCL Corp. as part of an integrated enterprise that includes one or more subsidiaries that may have discriminated against Plaintiffs-Intervenors.  Even if the integrated enterprise test did apply here, Plaintiffs do not show that its requirements are met here.

1.      The Record Does Not Support Claims of Direct Discrimination by NCL Corp.

As a threshold matter, the court must determine whether Title VII even applies to NCL Corp.  Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2. Title VII only covers employers with "fifteen or more employees." 42 U.S.C. § 2000e.

There is no evidence that NCL Corp., if viewed as a corporation standing on its own, had fifteen employees.  NCL Corp. claims that it had and has no employees.  Veitch Dep. 6, 26.  NCL Corp. says it is only a holding company, not an employer for the purposes of Title VII.  NCL Corp. Motion at 10-11.  This

17

court questions the basis on which NCL Corp. determines its lack of employees.  NCL Corp. relies for that determination on a factual assertion by its President.  The problem with this assertion is that whether persons (such as officers) associated with NCL Corp. qualify as employees is not a purely factual question that the President may attest to.  But even ignoring the President's assertion, the record does not establish that NCL Corp. ever had at least fifteen employees.  Certainly there is no evidence of fifteen NCL Corp. officers, and there is no reference to any nonofficer employee.  NCL Corp. thus cannot be sued under Title VII when viewed as an independent corporation.

Nor can Plaintiffs proceed against NCL Corp. under other theories, such as state law, which do not have a fifteen-employee requirement.  The impediment to proceeding against NCL Corp. is that Plaintiffs advance no evidence that NCL Corp. was involved in discriminating against Plaintiffs-Intervenors. Certainly, NCL Corp. cannot be charged with discrimination simply because a subsidiary allegedly discriminated.  When a subsidiary hires employees, there is a strong presumption that the parent company is not the employer.  Johnson v. Flowers Indus., Inc., 814 F.2d 978, 980 (4th Cir. 1987); accord Watson v. Gulf and W. Indus., 650 F.2d 990, 993 (9th Cir. 1981).

Given the absence of evidence of direct discrimination by NCL Corp. itself, and Plaintiffs' failure to overcome the

18

presumption that NCL Corp. is not the employer of its
subsidiary's personnel, no claim against NCL Corp. survives.[8]

          Plaintiffs protest that NCL Corp. should be held
jointly liable under one of the exceptions enunciated in Nowick,
351 F. Supp. 2d 1025, decided by Judge Alan Kay of this district.
The court notes that Nowick set forth exceptions to the
administrative exhaustion requirement, not exceptions to when a
parent company can be held jointly liable with its subsidiary.
Id. at 1036-37 (listing exceptions to when a party not named in
an EEOC administrative charge may be named as a defendant in a
lawsuit).  Nowick did discuss how indirect employers can be held
liable under Title VII, noting that the Ninth Circuit "extended
Title VII coverage to indirect employers when those employers
discriminated against and interfered with the employees'
relationship with their employers."  Anderson v. Pac. Mar. Ass'n,
336 F.3d 924, 931 (9th Cir. 2003).  But NCL Corp. is not an
employer for Title VII purposes, given the lack of evidence that
it had at least fifteen employees in 2004.

          2.        The Record Does Not Support Treating NCL
                    Corp. as Part of An Integrated Enterprise.

          Plaintiffs argue that, even if NCL Corp. is not liable
when viewed as an independent corporation, it is so integrated

---

          [8] This conclusion is buttressed by the same facts and
analysis that cause this court to rule that Plaintiffs do not
satisfy the four-part integrated enterprise test, even assuming
it applies here.

with its subsidiaries that it shares their liability under <u>Morgan</u> <u>v. Safeway Stores, Inc.</u>, 884 F.2d 1211 (9th Cir. 1989).  EEOC Opp'n to NCL Corp. at 25.  Plaintiffs point to recent SEC filings as evidence that NCL Corp. operated as an integrated enterprise with its subsidiaries, and that the integrated enterprise had between 10,000 to 14,0000 employees from 2004 to 2006.  <u>Id.</u> at 25-26.[9]  Thus, Plaintiffs argue that NCL Corp. more than meets Title VII's fifteen-employee requirement.

    Plaintiffs cannot proceed under this theory unless the integrated enterprise test applies in this case.  In <u>Safeway</u> <u>Stores</u>, the Ninth Circuit held that, under the integrated enterprise test, multiple businesses could be treated as a single employer for Title VII purposes if they had "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." <u>Safeway Stores</u>, 884 F.2d at 1213 (citing <u>Childs v. Local 18,</u> <u>Int'l Bhd. of Elec. Workers</u>, 719 F.2d 1379, 1382 (9th Cir. 1983)).  This integrated enterprise test, however, only applies in certain contexts.

    The Ninth Circuit has clarified that this test applies when an allegedly discriminatory employer, not covered by Title

_____

    [9] The SEC excerpt that purportedly establishes the number of NCL Corp. employees--Bates number EEOC 0924--is missing from the EEOC's filings.  Even assuming that the omitted page sets out the number of employees, and considering that purported fact, the analysis is the same.

VII because it has fewer than fifteen employees, needs to be integrated with another employer to fulfill Title VII's fifteen-employee requirement:

> A plaintiff with an otherwise cognizable Title VII claim against an employer with less than 15 employees may assert that the employer is so interconnected with another employer that the two form an integrated enterprise, and that collectively this enterprise meets the 15-employee minimum standard.  We use the integrated enterprise test to judge the magnitude of interconnectivity for determining statutory coverage.

Anderson, 336 F.3d at 929.  Indeed, the history of how the integrated enterprise test has been applied in the Ninth Circuit confirms that the test is only employed to determine statutory coverage under Title VII if there is not already an otherwise qualified employer subject to the suit.

In Safeway Stores, the plaintiff's employer, Safeway, was not sued for discrimination.  Instead, the plaintiff sued a federal credit union associated with Safeway.  The credit union had fewer than fifteen employees.  The Ninth Circuit applied the integrated enterprise test to determine whether the credit union was so integrated with Safeway that it qualified as an employer for Title VII purposes.  Safeway Stores, 884 F.2d 1211, 1212-13.

Similarly, in Kang v. U. Lim America, Inc., 296 F.3d 810 (9th Cir. 2002), the court employed the integrated enterprise test to determine the applicability of Title VII to a direct

employer with only six employees.  The court applied the test to integrate the direct employer with a related subsidiary that had more than fifty employees "for purposes of Title VII coverage." Id. at 814-15; see also Herman v. United Bhd. of Carpenters, 60 F.3d 1375, 1383 (9th Cir. 1995) (applying the integrated enterprise test when an enterprise did not meet the minimum employee requirement under the Age Discrimination in Employment Act); Childs, 719 F.2d at 1382 (applying the integrated enterprise test "to determine whether two employing entities constitute a single employer for purposes of jurisdiction under Title VII").

The Ninth Circuit's recent decision in Anderson is the Ninth Circuit's clearest indication that the integrated enterprise test is inapplicable when there is an entity that indisputably qualifies as an employer under Title VII even without considering integration with a related entity.  The defendant, Pacific Maritime Association ("PMA"), was a nonprofit association made up of companies that employed the plaintiffs. Anderson, 336 F.3d at 925.  For reasons that are not clear, the plaintiffs dropped their direct employers from the lawsuit, although those were the entities that had allegedly discriminated against them.  That left PMA as a defendant.  PMA had enough employees of its own to qualify as an employer under Title VII. However, PMA had not directly employed the plaintiffs.  The

22

plaintiffs invoked the integrated enterprise test, seeking to hold PMA liable for the actions of its member employers. Id. at 928. The Ninth Circuit held the test inapplicable because the test was not necessary to trigger Title VII liability: "Here, PMA does not dispute that it employs at least 15 employees. Because this places PMA within Title VII's statutory coverage as an 'employer,' the integrated enterprise test is inapplicable." Id. at 929 (footnote omitted).

Analogously, a recent decision by another judge in this district concluded that the integrated enterprise test was inapplicable when there was already a business that qualified as an employer under Title VII. In Nowick, the plaintiff's direct employer already qualified as an employer under Title VII. The plaintiff invoked the integrated enterprise test in an attempt to hold a limited partner jointly liable, but Judge Alan Kay declined to apply the test. Judge Kay, citing Anderson, said, "Here, there is no question that MLVO, Plaintiff's direct employer, qualified as an employer under Title VII. Thus, the integrated enterprise test is not applicable in this case." Nowick, 351 F. Supp. 2d at 1034 (internal citation omitted).

NCL America, the owner and operator of Pride of Aloha, qualifies as an employer for Title VII purposes. Because there is already an employer for Title VII purposes, Plaintiffs cannot invoke the integrated enterprise test to bring NCL Corp. under

23

Title VII as an additional employer.  Unlike cases in which the
Ninth Circuit has applied the integrated enterprise test, this
case involves an employer, NCL America, with at least fifteen
employees.  No integrated enterprise is needed to meet the
jurisdictional requirement of Title VII.  The integrated
enterprise test simply does not apply here to render NCL Corp. an
employer integrated with its subsidiaries.

     This court notes that, in the Ninth Circuit, the
integrated enterprise test has more limited use than in some
other circuits.  The Ninth Circuit has stated that the integrated
enterprise test "does not determine joint _liability_ as the
parties suggest, but instead determines whether a defendant _can
meet the statutory criteria_ of an 'employer' for Title VII
applicability."  _Id._; _see_ _also_ _EEOC v. Pac. Mar. Ass'n_, 351 F.3d
1270, 1274 (9th Cir. 2003); _cf._ _Cook v. Arrowsmith Shelburne,
Inc._, 69 F.3d 1235, 1240-41 (2d Cir. 1999)(adopting the
integrated employer test and listing other circuits that have
also adopted the test in the context of parent-subsidiary
relationships).  The Ninth Circuit has not to date applied the
integrated enterprise test to establish joint liability.

     Thus, in _Nowick_, Judge Kay noted, "Although other
Circuits have used the integrated enterprise test to establish
the liability of a parent company for a subsidiary's violation of
Title VII, the Ninth Circuit has not done so, and the Court

24

declines to extend the application of the test here." 351 F. Supp. 2d at 1034 n.28 (internal citation omitted). Judge Kay's limitation on use of the integrated enterprise test is consistent with the Ninth Circuit's application of the test to only those situations in which an employer does not qualify on its own under Title VII.

The integrated enterprise test is inapplicable to NCL Corp. for either meeting Title VII's fifteen-employee requirement or establishing joint liability.

3.        Even If the Integrated Enterprise Test Applies, the Evidence Does Not Show That NCL Corp. and NCL America Are an Integrated Enterprise.

Even if the integrated enterprise test does apply here, Plaintiffs do not satisfy the four-part integrated enterprise test.

As noted above, the Ninth Circuit has identified four factors that indicate that businesses constitute an integrated enterprise: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." Safeway Stores, 884 F.2d at 1213. Cf. Johnson, 814 F.2d at 980 ("A parent company is an employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two companies are the same entity.").

25

With respect to the interrelated operations factor, Plaintiffs point to the common corporate address, common marketing and customer rewards plans, and common human resources program (including employee evaluations, employee benefits, and personnel files) allegedly shared by NCL Corp., NCL America, and NCL Bahamas.  This court questions whether NCL Corp., which purports to be a holding company, had any marketing or rewards program at all, much less a "common" one.  Even putting that aside, and accepting Plaintiffs' assertions, this is scant evidence of interrelated operations.

Plaintiffs next address the common management factor, asserting that the same officers oversaw operations throughout the NCL Corporate Structure, including NCL America's employment decisions.  Plaintiffs say that "NCL executives" involved in the termination decision of Plaintiffs-Intervenors "functioned as NCL-wide officers" and that these individuals "simultaneously held official positions with all three entities involved in the this suit."  EEOC Opp'n to NCL Corp. at 26; see also id. at 21 ("The NCL officers make decisions for the NCL entities regardless of which NCL entity employs them on paper.  In practice, and under the law, these NCL entities operate as a single entity.  Thus all are appropriate Defendants, and are all liable for discriminating against the . . . Charging Parties."); id. at 24 (arguing that NCL Corp. participated in the discriminatory

conduct because "all of the NCL company executives exercised
authority across all of these NCL companies, even if they did not
have a title with the corporate parent"). Plaintiffs' assertion
is more argument than evidence. While individual officers wore
multiple hats among the related corporations, it does not follow
that the management was unified or "common." Plaintiffs simply
conclude that the overlapping of certain officers establishes
"common management."

Plaintiffs are particularly weak in establishing the
third factor, centralized control of labor relations. Plaintiffs
argue that NCL Corp. was in the business of operating cruise
ships and that, when officers of NCL Corp. approved of, or
consented to, Plaintiffs-Intervenors' discharges, these officers
were acting in their capacity as NCL Corp. employees. But,
because NCL Corp. was a holding company, not a cruise ship
operator, it makes little sense to assume that officers holding
concurrent positions with NCL Corp., NCL America, and NCL Bahamas
were acting in their capacities as NCL Corp. officers in deciding
to fire NCL America employees. Plaintiffs present no evidence
that the NCL Corp. individuals indeed wore their NCL Corp. hats
in making any labor-relation decisions. See Lusk v. Foxmeyer
Health Corp., 129 F.3d 773, 779 (5th Cir. 1997) (noting that
employees may change hats to act for separate corporations and

requiring claimants to "point to evidence" that officers were
wearing their parent corporation hat).

What is particularly telling is Plaintiffs' focus on
the coordination between NCL America and NCL Bahamas, rather than
between NCL Corp. and any subsidiary.  See e.g., EEOC Opp'n to
NCL Corp. at 28-29 (arguing that there was centralized control of
labor relations because NCL America and NCL Bahamas employed
similar policies, and Chesney, an NCL Bahamas employee,
maintained the computerized crew scheduling system); see also
Veitch Dep. at 77-78 (noting that the NCL team and its
subsidiaries use the same equal employment opportunity policy,
which is likely maintained by the Human Resources Department of
NCL Bahamas).  To the extent Plaintiffs are relying on the
administration of common employee benefits to all of NCL Corp.'s
subsidiaries, the court does not find this factor determinative,
as "[i]t is common for parent companies and their subsidiaries to
have common pension and benefits plans in order to achieve
certain economic efficiencies, and courts have held this type of
action is not evidence of single employer status."  EEOC v. Con-
Way, Inc., 2007 WL 2610367, at *4 (D. Or. Sept. 4, 2007) (citing
cases).

Nor are Plaintiffs persuasive in citing to a 2007 SEC
annual report filed by NCL Corp. stating that "we" operate cruise
ships.  EEOC Opp'n to NCL Corp. at 5.  This statement does not

28

merge NCL Corp., a holding company, with its operational subsidiaries.  As pointed out at the hearing, that SEC Report covered NCL Corp. and its subsidiaries, so the reference to what "we" do was not necessarily a statement of what NCL Corp. does or did.  It does not appear that every statement in the SEC Report can be attributed to NCL Corp., as well as to each of its subsidiaries.

Plaintiffs try to bolster their position on centralized control of labor relations by pointing to testimony by Veitch, President of NCL Corp., that Plaintiffs say establishes that NCL America reported to NCL Corp. on amendments to personnel policies.  The testimony referred to at page 28 of the EEOC's opposition to NCL Corp.'s summary judgment motion does not clearly state what Plaintiffs claim, and it is difficult to resolve the ambiguities in the testimony because the preceding pages are not attached.  The testimony could conceivably refer to the expectation that NCL America officers had to report to Veitch in his capacity as NCL America's CEO, not as NCL Corp.'s President.

The fourth factor—common ownership or financial control—is addressed by Plaintiffs with similarly problematic evidence.  Plaintiffs note that NCL Corp. owns its subsidiaries, NCL America and NCL Bahamas, and that Kritzman, an NCL America officer, needed approval from Veitch for large capital

expenditures.  This proves little as Veitch was NCL America's CEO, and he may have given approval in that capacity, not as NCL Corp.'s President.  Plaintiffs are thus left with little more than a parent-subsidiary relationship.  This kind of evidence would make every parent and subsidiary an integrated enterprise.

It is perhaps to avoid such a result that the Ninth Circuit has not adopted the integrated enterprise test for parent-subsidiary relationships.  The Fifth Circuit has discussed the subject in depth in Lusk, 129 F.3d 773.  The court applied the test to claims under the Age Discrimination in Employment Act ("ADEA").[10]  FoxMeyer Drug was a wholly owned subsidiary of FoxMeyer Corporation, a holding company with no employees. FoxMeyer Corporation was, in turn, held by National Intergroup, Inc. ("NII"), a holding company with its own employees.  NII was affiliated as a parent or subsidiary with numerous other corporations.  FoxMeyer Drug, FoxMeyer Corporation, and NII shared the same corporate headquarters.  In addition, three individuals--Melvyn Estrin, Abbey Butler, and Thomas Anderson-- held officer positions with all three corporations.  Id. at 775.

---

[10] Title VII and the ADEA have virtually identical definitions of "employer" and "employee."  See 42 U.S.C. § 2000(e); 29 U.S.C. § 630.  Courts have considered interpretations of one of these employment statutes applicable to the other.  See, e.g., Fichman v. Media Ctr., 2008 WL 115139, at *4 (9th Cir. 2008); Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993).

An officer holding concurrent positions with FoxMeyer Drug and FoxMeyer Corporation conferred with Estrin and Butler regarding FoxMeyer Drug's financial performance.  As a result of these discussions, the officer ordered executive officers at FoxMeyer Drug and FoxMeyer Corporation to create a plan for reducing the sales force.  The plan was approved by Estrin, Butler, and Anderson, and the plaintiffs lost their jobs under the plan.  Id. at 776.

The discharged employees brought an action under the ADEA, alleging age discrimination by their direct employer, FoxMeyer Drug.  The employees also sued FoxMeyer Corporation and NII, arguing that the three entities constituted a "single employer."  The Fifth Circuit employed a four-part test, identical to the Ninth Circuit's integrated enterprise test. Compare id. at 777 (listing (1) interrelation of operations, (2) centralized control of labor decisions, (3) common management, and (4) common ownership or financial control as the relevant factors in determining whether two businesses constitute an single employer) with Kang, 296 F.3d at 815 (same).  The Fifth Circuit affirmed the district court's grant of summary judgement to NII, concluding that there was insufficient evidence demonstrating that NII qualified as a single employer with its subsidiaries under Title VII.  Lusk, 129 F.3d at 776.

The Fifth Circuit noted that the "doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." Id. at 778; see also Watson, 650 F.2d at 993 ("In the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary.").  Drawing on this doctrine, the Fifth Circuit set a heightened standard for employing the four-factor test in the context of parent-subsidiary relationships.

> Common management and ownership are ordinary aspects of a parent-subsidiary relationship. A parent corporation's possession of a controlling interest in its subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability.  Thus, courts have recognized that the mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer.  Some nexus to the subsidiary's daily employment decisions must be shown.

Lusk, 129 F.3d at 778 (internal citations omitted).

Applying this heightened standard, the court noted that the plaintiffs' evidence that NII and FoxMeyer Drug had common management and ownership was not enough to demonstrate single employer status.  Id.

In arguing for single employer status, the plaintiffs principally relied on their argument that there were interrelated

operations between NII and it subsidiaries.  The plaintiffs noted that Anderson, Butler, and Estrin had approved of the alleged discriminatory termination plan.  <u>Id.</u> at 779.  The Fifth Circuit was unpersuaded and pointed to the "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent two corporations separately, despite their common ownership."  <u>Id.</u>, <u>quoted in</u> <u>United States v. Bestfoods</u>, 524 U.S. 51, 69 (1998). The court concluded that Anderson, Butler, and Estrin's involvement in the alleged discriminatory conduct "tells us nothing more than that they were acting as the three highest ranking executives at FoxMeyer Drug."  <u>Id.</u> at 780.  Consequently, the court held that the plaintiffs had failed to produce evidence sufficient to withstand summary judgment on the issue of whether NII constituted a single employer with its subsidiaries.  <u>Id.</u> at 781.  For much the same reasons, this court concludes that Plaintiffs do not show that NCL Corp. and its subsidiaries are an integrated enterprise, even assuming the four-factor test applies here.

V.      <u>CONCLUSION.</u>

        Norwegian Cruise Line's summary judgment motion and the EEOC's and Plaintiffs-Intervenors' companion counter motions are deemed as moot.  Norwegian Cruise Line's Motion for Rule 11 Sanctions is also denied.

The integrated enterprise test is inapplicable to NCL Corp.  Even if the integrated enterprise test did apply, Plaintiffs fail to identify a question of fact as to whether NCL Corp. and NCL America constitute an integrated enterprise.  Nor is there evidence in the record that NCL Corp. participated in the alleged discriminatory conduct.  NCL Corp.'s Motion for Summary Judgment is granted with respect to all claims against NCL Corp.  As a corollary to the granting of NCL Corp.'s motion, the EEOC's and Plaintiffs-Intervenors' counter motions are denied.

This order leaves for future adjudication all claims against NCL America, as well as newly alleged claims against NCL Bahamas.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


EEOC v. NCL America, Inc., et al., Civ. Nos. 06-00451, 07-00372 SOM/BMK; ORDER DENYING NORWEGIAN CRUISE LINE LTD.'S MOTION FOR SUMMARY JUDGMENT, DENYING NORWEGIAN CRUISE LINE LTD'S MOTION FOR RULE 11 SANCTIONS, GRANTING NCL CORPORATION LTD.'S MOTION FOR SUMMARY JUDGMENT, DENYING BOTH OF EEOC'S COUNTER MOTIONS FOR SUMMARY JUDGMENT AGAINST NORWEGIAN CRUISE LINE LTD. AND NCL CORPORATION LTD., AND DENYING BOTH OF PLAINTIFFS-INTERVENORS' COUNTER MOTIONS FOR SUMMARY JUDGMENT AGAINST NORWEGIAN CRUISE LINE LTD. AND NCL CORPORATION LTD.